JACOB W. FISHER

v.

T. W. GRIFFITH REALTY COMPANY, a corporation, and J. H. MAYZEL COMPANY, a corporation.

[Decided June 3d, 1917.]

1. In a suit to prevent the erection of an apartment house in violation of a restrictive agreement—*Held*, that the evidence was insufficient to warrant the relief asked, the character of the locality having changed greatly since the execution of the agreement, and several buildings having been erected contrary to the restrictions of the agreement.

2. A court of equity will not, at the suit of a party thereto, enforce a restrictive agreement covering but a small territory, where it appears that the character of development of the surrounding territory unrestricted has been such as to defeat the purpose of the parties to the restrictive agreement.

On bill, &c.

*Mr. Edgar H. Pinneo* (of *Messrs. Riker & Riker*), for the complainant.

*Mr. Saul Cohn,* for the defendants.

LANE, V. C.

The bill is filed by the owner of a piece of property on the westerly side of Lincoln avenue, in the city of Newark, between Elwood and Delavan avenues, to prevent the erection of an apartment-house upon the southwesterly corner of Elwood and Delavan avenues, a point distant from complainant's house, exclusive of the width of Delavan avenue, of one hundred and three and eight-tenths feet. The right of complainant is based upon an agreement entered into on or about the 1st of February, 1894, between the then owners of the property extending from a point one hundred feet south of Elwood avenue on the westerly side of

Lincoln avenue to a point two hundred feet south of Delavan avenue and extending for a depth of two hundred feet, restricting such property to use for the erection of private residences. The agreement referred to was without consideration other than mutual promises. For the purpose of these conclusions I have determined to adopt the construction put upon the agreement by Vice-Chancellor Howell in a memorandum handed down by him upon the application for preliminary injunction, which construction is to the effect that the agreement as entered into would prevent the erection of the structure proposed by the defendants. The complainant acquired his title by deed from Mary Ella Eagles, dated March 27th, 1909. Mrs. Eagles and her husband, who owned the property in 1894, were parties to the agreement providing for the restrictions. The street next westerly to Lincoln avenue is Summer avenue. Originally, the restricted property, or most of it, had been owned by what is now the Phillips estate. The Phillips homestead is on the plot, a portion of which is now sought to be used for apartment-house purposes. The estate also owned property on the easterly side of Summer avenue, and at or about the date the agreement was entered into between the property owners on the westerly side of Lincoln avenue a similar agreement was entered into by the property owners on the easterly side of Summer avenue, among whom was Mrs. Eagles, the predecessor in title of the complainant. At the time the respective agreements were entered into the property in the immediate neighborhood was developed in substantially the same manner. From Chester avenue, the street next to Delavan, southerly, to Elwood avenue, on the westerly side of Lincoln avenue, there were either private residences or vacant lots. The buildings were substantial, and by that I mean structures costing in the neighborhood of from $10,000 to $15,-000, and requiring the outlay of considerable money each year to properly maintain. The remaining property, in the block bounded by Elwood, Summer, Delavan and Lincoln, was undeveloped. On the easterly side of Lincoln avenue, from Chester to Elwood, there were a number of private dwellings which had been built for some time. These dwellings, while not as substantial as those on the westerly side, yet housed persons who

had been in the neighborhood for years, and offered no obstacle to the consummation of the plan which I think those who entered into the restrictive agreement had in mind. Nowhere on the restricted area or in the neighborhood were there two-family houses or apartments. The neighborhood was not only strictly residential, in the sense that almost all who lived therein owned their own houses, but residential in the sense that the houses erected might be termed residences in contradistinction to dwellings. Considerable of the land on the easterly side of Lincoln avenue was undeveloped. There is no doubt in my mind but that the purpose of the parties to the agreement of 1894 was to keep the neighborhood strictly residential, a neighborhood in which a person who could afford to invest anywhere from ten to fifteen thousand dollars in a residence, and who could afford to keep up such a residence, would be glad to live. Whether that hope and anticipation would be achieved or not depended, of course, upon whether the undeveloped property and the property unrestricted in the immediate neighborhood should be developed upon a corresponding scale. The restricted area now under consideration comprised a comparatively short distance on one side of a street. It is apparent that if the other side of the street facing the restricted area should be developed in a manner not consistent with the plan of those entering into the agreement, the purpose of the agreement would fail. So, also, if the property on the side streets, Delavan and Elwood, or on the street in the rear, Summer, should be developed in a manner not consistent with the plan, this would mean its failure. That the parties at the time realized that it was necessary for the success of the plan that the easterly side of Summer avenue should be restricted, is indicated by the fact that similar restrictions were entered into by the owners on that street. To these restrictions, as I have above stated, Mrs. Eagles, the predecessor in title of the complainant, was a party. I might say that originally the Phillips estate owned the entire block bounded by Summer, Delavan, Lincoln and Elwood avenues, approximately one-half of the block bounded by Summer, Chester, Woodside and Elwood avenues, Woodside being the street next westerly to Summer, approximately one-half the block bounded by Mount

Prospect, Elwood, Woodside and Chester avenues, Mount Prospect being the street next westerly to Woodside, and also a large portion of the block bounded by Lincoln, Delavan, Summer and Chester avenues; it also owned six lots north of Elwood opposite the block between Woodside and Summer. Conceding that the restrictions under discussion would prevent the erection of the proposed structure of the defendants, the question is whether or not the neighborhood has so changed as to make it inequitable for this court to enforce the provisions of the agreement. I think it has.

Facing complainant's house there have been erected on the northeast corner of Delavan and Lincoln avenues two two-family houses. The remainder of the easterly side of the street is built up in approximately twenty-one one-family houses. These houses, however, are not comparable in any respect with those built upon the westerly side of the street. While they are private dwellings, each of them covers practically an entire lot, this with few exceptions, and they are of much cheaper construction than those which apparently were contemplated by the parties to the agreement. The street next easterly to Lincoln avenue is Washington, and between Delavan and Elwood it has developed into a business section with some two-family houses and dwellings. Some of the dwellings on the easterly side of Lincoln avenue, between Delavan and Elwood, are houses which have been removed from the westerly side of Washington. The easterly side of Summer avenue, which is the westerly boundary of the block in which complainant's house is situate, is built up substantially in two-family houses. There are ten two-family houses and nine single houses, excluding the dwelling on the southeasterly corner of Summer avenue and Elwood, and the dwellings are of the class that I have described as having been built on the easterly side of Lincoln avenue. On the easterly side of Summer avenue, extending from the southeasterly corner of Summer and Delavan, and on the property formerly of the Phillips estate, there have been erected a row of houses, eight of which are two-family and one of which is three-family. On the easterly side of Lincoln avenue, south of Delavan, there are a number of private dwellings of the character that I have de-

scribed as having been erected on the easterly side of Lincoln between Delavan and Elwood, and there are also two two-family houses between Delavan and Chester. An apartment-house has been built on one of the corners of Summer avenue and Delavan, I think on the southwest corner. Two apartment-houses have been built on the northerly side of Delavan avenue between summer and Lincoln, and these abut in the rear upon complainant's property. On the restricted territory it is conceded that there has been built on the southerly side of Delavan avenue, opposite the apartment-houses last referred to, at least one two-family house I find from the testimony that all three two-family houses on the southerly side of Delavan avenue are within the restricted territory. These two-family houses, while around the corner from the complainant, are but a comparatively short distance from him. On the westerly side of Lincoln avenue, two doors from the complainant, there have been erected five houses, which in the testimony have been called duplex, or double, in contradistinction to two-family. Each house has one roof, one set of outside walls, a partition in the middle, so that it may be used for two families. Whether they may be called, technically, private dwellings or not, I think, unquestionably, their erection was a violation of the spirit of the restrictive agreement. They are not in accordance in anywise with the plan of the parties to that agreement, but are rather in harmony with the present development of the territory in the immediate vicinity.

A survey of the territory in the vicinity indicates clearly that it has grown into a place principally for two-family and apartment-houses and small dwellings. On the northeasterly corner of Washington avenue and Delavan, a block away from complainant's house, is a twenty-three-family apartment-house; about a quarter way down the block, on the easterly side of Washington avenue, between Delavan and Chester, approximately two blocks from complainant's house, is a large apartment-house. The testimony taken before me demonstrates that the property within the restricted area is no longer salable for residential purposes. Two witnesses, one of whom was Alfred S. Skinner, Esq., who owned the property on the northwesterly corner of Lincoln avenue and Delavan, and was a party to the

agreement, testified that when they came to dispose of their houses they could do so only at great sacrifice. They and several other witnesses testified generally to the change in the neighborhood, attributing it to the construction of the car barns, the influx of small-salaried employes, the noisome smells which came sometimes from the Passaic river, and the establishment of the Mount Prospect and Forest Hill section of the city of Newark. It is to be observed that Mount Prospect avenue is the next street westerly to the vicinity under consideration, but it lies on a ridge and there is no access to it from the vicinity in question short of, I think, half a mile, except by stairs, so that there is a clear line of demarcation between the Mount Prospect section and this vicinity. No evidence worthy of serious consideration was produced which would indicate that the restricted property was at the present time salable for residential purposes. The effect of the development has been such as to completely surround this small restricted territory on one side of a street by a class of houses not at all in harmony with those contemplated by the restrictive agreement. I cannot see that the erection of the building in question will irreparably or in anywise injure the complainant, in view of the character of the neighborhood. The apartment-house to be erected is of the latest type; the rent will be approximately $10 a room, which means that there will be a class of people inhabit it who can afford to pay from forty to sixty dollars a month and upwards; the general character of the neighborhood will not be changed. The apartments are not so numerous as that there will be an excess of noise and confusion. Taking the territory as a whole I think that the apartment will be a betterment rather than a detriment. It must not be overlooked that neither the complainant nor his predecessor in title protested against the erection of the two-family houses on the southerly side of Delavan avenue within the restricted territory, and contrary to the restrictive agreement, nor against the erection of what have been called the double houses on the westerly side of Lincoln avenue within the restricted territory, and I think within the restrictive agreement, as construed by Vice-Chancellor Howell, nor that there are at the present time two apartment-houses on the northerly

side of Delavan avenue, which while not within the restricted territory abut on complainant's house; nor that complainant's predecessor in the title, although a party to the Summer avenue agreement, acquiesced in its violation. The ultimate fate of all of this territory is that it will be built up with two-family and apartment-houses. It is only a question of time. My recollection is that the complainant, or, if not the complainant, one of the witnesses who owned one of the residences, testified that a man would be foolish to buy into the territory for residential purposes in the sense contemplated by the restrictive agreement.

My conclusion is that it would be inequitable for this court to at this time enforce the restrictive agreement and that the case is within that of *Page* v. *Murray, 46 N. J. Eq. 325.*

I will advise a decree dismissing the bill, but, under the circumstances, the dismissal will be without costs. This case is determined, of course, solely upon the facts now before the court, and I express no opinion as to whether, if an attempt were made to erect in this neighborhood a tenement-house or a factory, or if an attempt were made to violate the restrictive agreement in any other manner, this court would or would not intervene.